```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF NEW MEXICO
```

In re:
JEFFREY NEIL RUBIN and
SANDA KAY DRAKE-RUBIN,
            Debtors.                           No. 11-11-13431-SA

**MEMORANDUM OPINION AFTER TRIAL ON**
**THE MERITS OF MOTION TO DISMISS**

This matter came before the Court on Community Bank's ("Bank") Amended Motion to Dismiss (doc 50), creditor Prestito Moneta's ("Moneta")(collectively, "Movants") joinder therein (doc 53) and Debtors' Objection (doc 55). Movants seek dismissal of this Chapter 11 proceeding pursuant to 11 U.S.C. § 1112(b) for cause[1]. Bank also argues that conversion is not possible because the Debtors are ineligible for Chapter 7 relief.

Conversion or dismissal of a Chapter 11 case is governed by 11 U.S.C. § 1112(b), which provides:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and this Memorandum Opinion constitutes findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

>     dismissing the case is not in the best interests of
>     creditors and the estate, and the debtor or any other
>     party in interest establishes that--
>         (A) there is a reasonable likelihood that a plan
>         will be confirmed within the timeframes
>         established in sections 1121(e) and 1129(e) of
>         this title, or if such sections do not apply,
>         within a reasonable period of time; and
>         (B) the grounds for converting or dismissing the
>         case include an act or omission of the debtor
>         other than under paragraph (4)(A)--
>             (i) for which there exists a reasonable
>             justification for the act or omission; and
>             (ii) that will be cured within a reasonable
>             period of time fixed by the court.
>     (3) ...
>     (4) For purposes of this subsection, the term 'cause'
>     includes--
>         (A) substantial or continuing loss to or
>         diminution of the estate and the absence of a
>         reasonable likelihood of rehabilitation;
>         (B) gross mismanagement of the estate;
>         ...

Section 1112(f) prohibits conversion to a chapter under which a debtor would not be eligible. ("Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.")

**FACTS**

The Court conducted two days of trial on this matter. Bank called Mr. Rubin as an adverse witness. This took one and one-half days of the trial. Bank also briefly called Ms. Drake-Rubin as an adverse witness. No one else testified. Debtors rested at the conclusion of Bank's case, having presented all of their relevant facts during cross-examination.

-2-

The Court found both witnesses to be entirely credible. They are highly educated and intelligent, very hard-working individuals committed to high performance in their respective careers, but also deeply committed to their family. The Court also finds that both have become used to a life style consistent with, at least for New Mexico, very high salaries. For example, both were very unapologetic for having two children in an expensive private school, a daily nanny for delivering and picking up children at school and shuttling the children about the city to their various extra-curricular activities. They live in an exclusive gated community in a house whose value is less than the first mortgage. They have country club memberships. Before bankruptcy, they customarily took expensive vacations. The Debtors drive high-end vehicles. The family has a large, expensive motor home with no equity but a large monthly payment and for which they flat out state a "need." The Debtors have millions of dollars worth of term life insurance that would benefit their daughters in the event of death, but they were unwilling to even consider whether the amounts were excessive.

One consistent line of questioning by Bank throughout the two days of trial focused on the atypical expenses of this Chapter 11 case and the Debtors' response to those expenses. Both Debtors expressed an unwillingness to change any expenses unless the Court ordered them to, and then both stated that if

-3-

the Court were to forbid certain payments, they would continue to pay them anyway out of "exempt assets." The Debtors both conveyed the impression that this bankruptcy proceeding was nothing more than a necessary evil to deal with the fact that they have accumulated millions of dollars of debt and, once over the distasteful process, they would resume their extravagant lifestyle at the lake and country club and behind gated living.

Mr. Rubin is a physician. Ms. Drake-Rubin is a sales representative for a medical supplier. They have been in their current positions for 11 and 23 years respectively. They filed this joint Chapter 11 petition on July 29, 2011. The Statement of Financial Affairs ("SFA") shows joint income from employment of: 2009, $466,058; 2010, $483,211; and 2011 to July 29, $128,928. Doc 58. Debtors have three children, aged 16, 13 and 9. Schedules I and J show current average monthly income and current average monthly expenditures of $14,414 and <$18,653> respectively. Doc 1. Therefore, there is a monthly average shortfall of <$4,238>.

Debtors are not "consumer debtors." Bank acknowledged during closing arguments that more than 50% of Debtors' debts were related to businesses and profit making activities.

The SFA discloses Debtors involvement in six lawsuits on the petition date. In one, Mr. Rubin was a plaintiff. In the others, Mr. Rubin was the defendant in collection and foreclosure

actions seeking millions of dollars in judgments, mostly in situations where one or both of the Debtors guaranteed debt of LLCs or partnerships involved in developing real property.

Debtors filed a Disclosure Statement on April 6, 2012 effective of even date.  Debtors propose to contribute $3,000 per month from their disposable income and $1,997 per month as proceeds from a real estate contract to fund the plan.  Based on scheduled unsecured claims of $7,423,088 the Debtors project that unsecured creditors would receive a 2% dividend.  The Disclosure statement also indicates that the Debtors expect professional fees of $85,000 as an administrative expense and 2011 income taxes as an administrative expense in the amount of $45,800. Debtors also schedule a priority 2010 income tax of $37,801. Therefore, the 2% dividend would probably not commence until year 4 or 5 of the plan.

Debtors ongoing budget, Exhibit F to the Disclosure Statement, projects annual joint receipts from 2012 through 2016 of $322,296.  It also projects annual joint disbursements (including plan payments of $36,000) for the same time of $326,230.  In other words, to fund the plan the Debtors would be expending about $4,000 per year more than their income.  The budget includes a projected RV payment of $17,434 per year and projected term life insurance payments of $17,423 per year.

Debtors most recent Monthly Operating Report appears as

docket number 124, filed May 18, 2012 for the month ending April, 2012. For the approximate ten month duration of this Chapter 11 case, total receipts have been $225,025. Total disbursements have been $245,866. This is a net cash outflow of $20,841 without making any payments on prepetition debts or any payments on a second mortgage on the Debtors' residence (which Debtors intend to avoid as totally unsecured.) The Operating Report also shows an account payable to Debtors' attorney for post-petition services of $95,813. In summary, the estate has been depleted in the amount of $116,654 over ten months, or about $11,700 per month.

The Court finds that this loss represents a "substantial or continuing loss to or diminution of the estate." The Court also finds that there is an "absence of a reasonable likelihood of rehabilitation" because there is no indication or willingness on the part of the Debtors to curb their life style. Despite Debtors' representations that they can make up these deficiencies from "exempt property" the Court seriously doubts there is enough exempt cash flow to get the creditors back to where they were when this case was filed. In sum, the Court finds "cause" to dismiss or convert.

The Court finds no unusual circumstances such that the case should not be dismissed or converted. If dismissed, Bank is agressively ready to seize and tie up as much property as

-6-

possible. This violates the principle of equality of distribution to unsecured creditors. On the other hand, there are non-exempt assets that a Trustee could administer, including what appear to be three patently obvious fraudulent transfers that occurred in the year before filing.

The Court will enter an order converting this case to a Chapter 7 case.[2]

/s/ James S. Starzynski
Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  June 22, 2012

Copies to:

William F. Davis
6709 Academy NE, Suite A
Albuquerque, NM 87109

Leonard K Martinez-Metzgar
Office of UST
PO Box 608
Albuquerque, NM 87103-0608

James Jurgens
100 La Salle Cir Ste A
Santa Fe, NM 87505-6976

Jenny Dumas
Wiggins, Williams & Wiggins, P.C.
PO Box 1308
Albuquerque, NM 87103

---

[2] The Court disagrees with Bank's argument that Debtors are ineligible to be Chapter 7 debtors. Chapter 7 has no good faith requirement and the abuse provisions do not apply to non-consumer debtors. See In re Lobera, 454 B.R. 824, 853 (Bankr. D. N.M. 2011).